UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

STEVEN TATLOW, ET AL.
        Plaintiffs

v.                                           Case No. 2:10-CV-4053

COLUMBIA/BOONE COUNTY
COMMUNITY PARTNERSHIP
        Defendant.

**SUGGESTIONS IN SUPPORT OF RULE 11 MOTION FOR SANCTIONS**

This is a race discrimination case in which each Plaintiff (Stevens, Tatlow, and O'Farrell) claims a hostile work environment, retaliation, and unlawful discharge. Plaintiffs have filed a Motion for Sanctions under Rule 11 alleging that Defendant's Answer contains denials of factual contentions that are not warranted on the evidence and that are not based reasonable inquiry. The Rule 11 violation may be summarized as follows:

- In its Answer, Defendant expressly denies numerous factual contentions concerning Plaintiffs' complaints of race discrimination, Plaintiffs' complaints of a hostile work environment, and the circumstances surrounding the separation from employment of each Plaintiff (the "sanctionable denials").

- In its answers to Plaintiff's first set of interrogatories, Defendant identified Lolita Lucas-Howard ("Lucas-Howard"), Defendant's former executive director, as the sole source of evidence supporting one of the sanctionable denials.

- Defendant subsequently designated Lucas-Howard as its Rule 30(b)(6) designee to answer, on its behalf, deposition questions concerning the subject matter of the sanctionable denials.

- At Defendant's deposition, Lucas-Howard repeatedly testified, on behalf of Defendant, that Defendant has "no knowledge," that Defendant has "no specific knowledge," and that Defendant is "not prepared to testify" about the subject matter of the sanctionable denials.

- Defendant's lack of knowledge concerning the facts at issue in the sanctionable denials, and Defendant's inability to produce a witness who can provide a factual basis for the sanctionable denials, suggest that the denials (A) are not warranted on the evidence, and (B) were not formed after an inquiry reasonable under the circumstances.

- Plaintiff is in possession of emails and other correspondence sent to and from Lucas-Howard that squarely contradict several of the sanctionable denials.

- When put on notice of its Rule 11 violation, and in response to Plaintiffs' request that Defendant either withdraw or appropriately amend its Answer to conform to the lack of knowledge that Defendant admitted at its deposition, Defendant refused to amend its Answer and scolded Plaintiffs that a Rule 11 motion is "premature" (Ex. B[1]).

Under the circumstances, Plaintiff has reason to believe that Defendant pleaded erroneous and improper *pro forma* denials of material allegations, that Defendant did so without performing an adequate investigation, and that Defendant subsequently attempted to cover up its lack of investigation by erroneously asserting that its *pro forma* denials were based on the

---

[1] All exhibits referenced in these Suggestions are exhibits to the underlying Rule 11 Motion for Sanctions.

personal knowledge of Lucas-Howard and others, when in fact the denials are not warranted based on any evidence. Plaintiffs contend that this states a violation of Rule 11.

## I. The Rule 11 Evidence

A sample[2] of Plaintiffs' allegations and Defendant's denials, all highly material to Plaintiffs' claims, are set forth in the table below, together with Defendant's relevant Rule 30(b)(6) deposition testimony and references to relevant exhibits. Together, this evidence shows that Defendant denied specific factual allegations without a factual basis, and, in several instances, without so much as a cursory review of Defendant's own records.

All of the deposition testimony quoted below was given by Lucas-Howard, who was designated by Defendant pursuant to Rule 30(b)(6) to provide Defendant's testimony on the matters set forth below (see Ex. C; see also Ex. D at 5:18-25). At the beginning of the deposition, Lucas-Howard testified that she had reviewed the topic areas on which she had been designated to testify (Ex. D at 7:20-8:5), that she was prepared to testify on behalf of the Partnership about each of the subject areas (Ex. D at 8:6-8), and that there was no reason she could not give her "best testimony on behalf of the Partnership" (Ex. D at 7:6-10).

[The remainder of this page is intentionally blank.]

---

[2] In the Notice incorporated by reference into Plaintiff's Motion for Sanctions (Ex. A), Plaintiff identifies numerous additional unsupported allegations. For the sake of brevity, only a subset, consisting of the most critical denials, is analyzed in these Suggestions.

| Defendant's Denials (ECF Document # 14) | Defendant's Deposition Testimony (Ex. D) |
|---|---|
| 45. Stevens was constructively discharged and tendered her resignation on March 2, 2009.<br>ANSWER: Defendant denies the allegations contained in this paragraph. | Q. . . . Do you, testifying on behalf of the Partnership, have an explanation of what the circumstances were that were surrounding Janet Stevens' separation from employment?<br>A. I have no knowledge.<br>(Ex. D at 27:2-6) |
| 124. On March 24, 2009. . . . Tatlow filed a formal grievance alleging a "Hostile Work Environment - Racial." Tatlow also complained directly to Lucas, in writing. Tatlow told Lucas that the hostile work environment had been reported to management and that it "continues to be an ongoing situation." Tatlow told Lucas that three individuals "have recently reported significant mental health issues due to our current situation" and that a fourth "was substantiated by a psychologist in writing." Tatlow specifically requested that Lucas take remedial action "to address this situation."<br>ANSWER: Defendant admits that it corresponded with Tatlow relating to his unexcused failures to report to work, which was followed by vague correspondence from him on March 24, 2009, unrelated to racial discrimination. Defendant denies the remaining allegations contained in this paragraph. | Q. . . .I'll direct you to number ten and you can read along with me. All complaints, grievances, and charges of race discrimination or race-based harassment made to Defendant's management at any time after October 15, 2007. Are you prepared to testify about that subject matter today?<br>A. No.<br>(Ex. D at 33:9-15)<br><br>See also Ex. E—the email quoted in paragraph 124 of the Amended Complaint—the content of which Defendant denies. |

[Table continues on next page.]

| | |
|---|---|
| 135. On Wednesday, April 8, 2009, Tatlow responded to Lucas' request for more information concerning the hostile work environment. Tatlow disputed Lucas's claim that she had not previously been made aware of the hostile work environment, and he stated that complaints were being suppressed by a fear of retaliation. Tatlow told Lucas that he had been physically threatened, and he complained about the removal of the work table from his office. Tatlow specifically referenced "the deep level of hostilities and racial tension "and requested that "an outside impartial resource be brought in to address the issue." Tatlow further complained as follows: "I feel that I have personally been discriminated against due to race, religion, and now disability and feel that little will be done. You have been very unresponsive to my requests for information and requests to meet." Tatlow further stated that "there are board members directly involved," and he informed Lucas that "I am in the process of filing a complaint with the Human Rights Commission."<br><br>ANSWER: Defendant denies the allegations contained in this paragraph. | Q. . . . Topic area 26, all email and other written correspondence exchanged before – between Defendant's executive director and Plaintiff Tatlow during the period beginning March 26, 2009, and ending April 30, 2009. Are you prepared to testify about that topic area today?<br>A. Yes.<br>　　　　　\*　　\*　　\*<br>Q. Can you tell me the dates on which emails were exchanged?<br>A. No.<br>Q. Can you tell me the subjects of the emails?<br>A. I don't recall.<br>　　　　　\*　　\*　　\*<br>Q. Can you tell me any dates on which written correspondence were exchanged?<br>A. No.<br>　　　　　\*　　\*　　\*<br>Q. What was the. . . content or the parts of the written correspondence that you can testify about?<br>A. Parts of were in reference to his employment situation.<br>Q. Okay. Can you be more specific than that?<br>A. Yes.<br>Q. Please be more specific.<br>A. It had to do with his separation from the organization.<br>Q. Can you be any more specific than that?<br>A. I don't recall specifics.<br>(Ex. D at 45:1-47:7) |

| | |
|---|---|
| 105. That same day (February 12, 2009), after Doxley and Carter confronted Tatlow in his office, Tatlow met with Plummer and told him that the Partnership was developing a hostile work environment and that four staff members had reported mental health issues related to the work environment. Tatlow specifically requested that human resource professionals from MoreSource be used for an intervention, but Plummer refused. No effective remedial action was taken.<br>ANSWER: Defendant denies the allegations contained in this paragraph. | Q. . . .Topic area 23, Defendant's response to a complaint made by Plaintiff Tatlow on or about February 12, 2009, to Defendant's executive director concerning a hostile work environment. Are you prepared to testify about that topic area?<br>A. I have no knowledge.<br>(Ex. D at 43:19-24) |
| 77. On October 27, 2007, Stevens lodged a complaint about the incident in which Elbert called Green a "racist." Stevens was present during this incident, and she complained that she was "extremely offended." No investigation was made, but the Partnership announced that it would conduct a "diversity training" on or about November 20, 2007. This training never occurred, and no corrective action was taken.<br>ANSWER: Defendant denies the allegations contained in this paragraph. | Q. . . . . Topic area 17, Defendant's response to a grievance filed by Plaintiff Stevens on or about October 27, 2007, concerning an incident in which it was alleged that Elbert called Green a racist.<br>A. I have no knowledge.<br>(Ex. D at 43:7-11) |
| 117. Although Stevens was still employed by the Partnership from March 2 through March 13, 2009, there was no adequate investigation of her complaint, and she was never offered the opportunity to remain in her position while an investigation was conducted or to reconsider her resignation based upon the Partnership's response to her complaint. Instead, Lucas immediately hired an African-American to replace Stevens.<br>ANSWER: Defendant denies the allegations contained in this paragraph. | Q. . . .Topic area 25, Defendant's response to a resignation letter submitted by Plaintiff Stevens on or about March 2nd, 2009, in which it was alleged that there was harassment and discrimination occurring in the workplace at the Columbia/Boone County Partnership. Are you prepared to testify about that topic area?<br>A. No.<br>(Ex. D at 44:25-12) |

| | |
|---|---|
| 126. On March 26, 2009. . . . Lucas delivered a written "disciplinary reprimand" to Tatlow. The reprimand stated that Lucas had observed "a pattern of substandard professional behavior" by Tatlow. The reprimand stated that Lucas had "narrowed" her concerns into "categories," but she provided no specific details. The categories of "concern" for which Tatlow was reprimanded included Tatlow's "salary expectations" and his "leave of absence requests." No specifics were provided, just general categories. The reprimand stated vaguely that Tatlow's behavior was "unprofessional and will no longer be tolerated," and it informed Tatlow that, "Effective immediately ... you are in an active and progressive discipline process .... " As "corrective action," the reprimand required, among other things, that Tatlow "utilize lunch hours" for doctor's appointments. This was contrary to the Partnership's written medical leave policies, which were uniformly applied to African-American employees.<br><br>ANSWER: Defendant admits that Lucas-Howard issued a letter of reprimand to Tatlow. Defendant denies the remaining allegations contained in this paragraph. | Q. The next topic area is the substance of and circumstances surrounding a written reprimand made to Plaintiff Tatlow on or about March 26, 2009. . . .<br>    \*    \*    \*<br>Q. I'll just ask it as simply as I can: Why did you reprimand Steven Tatlow?<br>A. Performance issues.<br>Q. Can you be specific as to what performance issues caused you to reprimand Steven Tatlow?<br>A. I can't be specific about what was in the reprimand.<br>    \*    \*    \*<br>Q. Why was the decision made to issue the reprimand?<br>A. Performance issues.<br>Q. And I'll ask you one last time, can you be specific about what those performance issues were?<br>A. I can't recall specifics.<br>(Ex. D at 47:8-50:11)<br><br>See also Ex. F—the reprimand quoted in paragraph 126 of the Amended Complaint—the content of which Defendant denies. |
| 41. Tatlow consistently received favorable job performance appraisals that rated his performance as meeting or exceeding expectations.<br>ANSWER: Defendant denies the allegations contained in this paragraph as stated.<br>44. Stevens consistently received favorable job performance appraisals that rated her performance as meeting or exceeding expectations.<br>ANSWER: Defendant denies the allegations contained in this paragraph as stated. | Q. Subject area number six. . . is all annual performance appraisals or other regular performance appraisals of Plaintiff Steven Tatlow, Janet Stevens, and Danny O'Farrell. Are you prepared to testify on that subject area?<br>A. No.<br>(Ex. D at 21:7-14) |

| | |
|---|---|
| 53. On or about April 17, 2009, for reasons described in more detail below, O'Farrell was discharged from his position as a VISTA member, and he became a fulltime employee of the Partnership.<br>ANSWER: Defendant denies the allegations contained in this paragraph. | Q. Topic area 33, Defendant's decision to change the employment status and/or job position of Plaintiff O'Farrell on or about April 17, 2009. Are you prepared to testify about that topic area?<br>A. No.<br>(Ex. D at 51:15-19) |

[The remainder of this page is intentionally blank.]

## II. The Rule 11 Violations

Defendant's continuing, affirmative denial of material allegations about which it has no knowledge, after receiving a Rule 11 notice, is breathtaking. It is even more so when one considers that in Defendant's interrogatory answers (which are unverified and signed only by counsel and not by a representative of Defendant), Defendant represents (see Ex. G) that Lucas-Howard is the sole source of evidence on which Defendant bases its denial of paragraph 126 of the Amended Complaint, quoted above. Clearly, Lucas-Howard—who "can't be specific" and "can't recall specifics" about the subject matter of paragraph 126—provides no adequate basis for Defendant to continue to deny the detailed and specific allegations contained in paragraph 126. Nevertheless, Defendant stubbornly maintains its challenged pleading and its unsupported denials.

Defendant blames its Rule 11 violation on its 30(b)(6) designee. Specifically, Defendant claims that its lack of knowledge concerning the sanctionable denials is a result of its 30(b)(6) designee, Lucas-Howard, testifying from her limited personal knowledge (see Ex. B). This is not a reasonable explanation. "[T]he duty to present and prepare a Rule 30(b)(6) designee goes beyond matters personally known to that designee or to matters in which that designee was personally involved." *Brazos River Authority v. GE Ionics, Inc.*, 469 F.3d 416, 433 (5th Cir. 2006). The deponent must prepare the designee to the extent matters are reasonably available, whether from documents, past employees, or other sources. *Id.*

In the present case, the inability of Defendant to prepare Lucas-Howard to support its denials leads inexorably to the conclusion that <u>Defendant has no documents, past employees, or other sources that support its denials</u>. If it did, then surely such sources of information would have been used to prepare Lucas-Howard. Any reference by Defendant to its unverified and

unsigned interrogatory answers purporting to identify such sources of information is not credible because (A) its interrogatory answer identifying Lucas-Howard as a source of evidence has proven to be erroneous and unreliable, and (B) if such other sources existed, Defendant had an obligation to use them to prepare Lucas-Howard, which clearly did not occur.

Defendant also suggests that its sanctionable denials are supported by witnesses not produced for its 30(b)(6) deposition (see Ex. B). Notably, Defendant fails to name a single witness who can support its denial of paragraph 126, which Defendant previously claimed to be supported by Lucas-Howard (see Ex. G), but about which Lucas-Howard, in truth, has no specific knowledge. This renders Defendant's explanation unavailing and unreasonable. Furthermore, pursuant to Rule 30(b)(6), Defendant designated Lucas-Howard to testify "about information known or reasonably available to the organization"—see Rule 30(b)(6)—and in doing so, Defendant had an obligation to ensure that Lucas-Howard was a person "having knowledge of the matters sought" by Plaintiffs and also to prepare Lucas-Howard so that she could "answer fully, completely, unevasively, the questions posed." *Brazos River Authority v. GE Ionics, Inc.*, 469 F.3d 416, 433 (5th Cir. 2006). Defendant is in no position now to claim that it has additional, secret knowledge that it withheld from Lucas-Howard when it prepared her for its 30(b)(6) deposition.

In light of all the circumstances, it is reasonable to conclude that Defendant made *pro forma* denials in its Answer without making the reasonable inquiry required by Rule 11; that Defendant attempted to cover up its misconduct with unverified and unsigned interrogatory answers that named plausible sources of information for its denials; that Defendant's misconduct has been exposed by its inability to produce a 30(b)(6) designee who could, under oath, support its denials; and that the inability of Lucas-Howard to support Defendant's denial of paragraph

126, which Defendant previously claimed to be based solely on information provided by Lucas-Howard, is damning.

If there is an innocent and reasonable explanation for Defendant's predicament (such as prevarication or recantation by Lucas-Howard), Defendant had ample opportunity to put forward such an explanation during the 21-day safe harbor period after Defendant was first accused of violating Rule 11. Counsel for Plaintiffs was expecting such an explanation, but instead received a blunt refusal by Defendant to withdraw or amend its Answer and a scolding that a motion for sanctions is "premature" (Ex. B). Defendants have done nothing to dispel the reasonable conclusion that they have violated Rule 11 by failing to make an adequate investigation before making the denials quoted above (and also those listed in Exhibit A) and by maintaining the denials, without supporting evidence, after Plaintiff served notice of the now-pending motion for Rule 11 sanctions.

### III.  Conclusion

Rule 11 sanctions may be warranted when a pleading "contains denials of factual contentions that are not warranted on the evidence." *Clark v. United Parcel Service, Inc.*, 460 F.3d 1004 (8th Cir. 2006). Denials not based reasonable inquiry also provide grounds for Rule 11 sanctions. See Rule 11(b). Both circumstances are present in this case.

"[T]he established standard for imposing sanctions is an objective determination of whether a party's conduct was reasonable under the circumstances." *Snyder v. Dewoskin (In re Mahendra)*, 131 F.3d 750, 759 (8th Cir. 1997). Defendant, in this instance, has put forth no reasonable explanation for its inability to support the sanctionable denials that it continues to present to the Court in its Answer. The only reasonable conclusion is that Defendant made the denials in the first instance without first making a reasonable inquiry, and that Defendant

presently has no factual basis to continue the denials. Under these circumstances, striking the Answer and granting a default judgment to Plaintiffs, or, at a minimum, striking those paragraphs of the Answer that are unsupported, is an appropriate sanction to deter repetition of the conduct or comparable conduct by others, as required by Rule 11(c)(4). An award of attorney fees is also warranted.

Date: October 13, 2010

Respectfully Submitted,

/s/ David G. Brown
DAVID G. BROWN        #42559
Brown Law Office LC
1714 Brandeis Ct., Ste. A
Columbia, MO 65203
Tel: (573) 777-1188
Fax: (800) 906-6199
dbrown@brown-law-office.com
*Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on October 13, 2010, a copy of the above was served upon all persons requesting electronic notification by filing it with the Court using the CM/ECF system.

/s/ David G. Brown